IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| _____ ) | |
| In re: ) | |
| EASTHAVEN MARINA GROUP, LLC, ) | CASE NO: 08-05453-8-JRL |
|         Debtor. ) | CHAPTER 11 |
| _____) | |
| ) | |
| EASTHAVEN MARINA GROUP, LLC, ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|         v. ) | Adversary Proceeding No: |
| ) | _____ |
| B&M HOLDINGS, LLC, and ) | |
| FUSS LAW FIRM, PC, TRUSTEE, ) | |
| ) | |
|         Defendants. ) | |
| _____) | |

## COMPLAINT

Plaintiff, complaining of Defendant, alleges and says as follows:

1.     This adversary proceeding relates to the Chapter 11 bankruptcy case of Easthaven Marina Group, LLC, Case No: 08-05453-8-JRL, filed with the United States Bankruptcy Court for the Eastern District of North Carolina on August 13, 2008.

2.     The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, and this matter is a core proceeding pursuant to 28 U.S.C. § 157.  The Court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## IDENTIFICATION OF PARTIES

4.     Plaintiff is a North Carolina limited liability company which maintains a principal

place of business in New Hanover County, North Carolina.

5.     Defendant B&M Holdings, LLC is, upon information and belief, a North Carolina limited liability company which maintains a principal place of business in New Hanover County, North Carolina.

6.     Defendant Fuss Law Firm, PC, upon information and belief, is a professional corporation engaged in business in the State of North Carolina. All allegations and claims for relief in this Complaint as to Defendant Fuss Law Firm, PC are made and alleged to it solely in its capacity as trustee under the terms of the Deed of Trust described below.

## FACTUAL ALLEGATIONS

7.     On March 2, 2007 ("Closing Date"), SHM Marina Group, LLC purchased certain real property located on Scotts Hill Loop Road in Pender County, North Carolina ("Marina Property") from Defendant B&M Holdings, LLC.

8.     On March 2, 2007, "Scotts Hill Marina Group, LLC" executed and delivered a Note dated March 2, 2007 in the original principal amount of $9,000,000.00 payable to Defendant (the "Note"). A copy of the Note is attached hereto as **Exhibit A**.

9.     The Note was prepared by an attorney for Defendant B&M Holdings, LLC.

10.     Upon information and belief, "Scotts Hill Marina Group, LLC" does not exist as a legal entity in North Carolina, and has never existed as a legal entity in North Carolina.

11.     On the Closing Date, Defendant B&M Holdings, LLC was paid $2,000,000.00 by SHM Marina Group, LLC from financing obtained by SHM Marina Group, LLC.

12.     Defendant B&M Holdings, LLC agreed that, in consideration for the purchase by SHM Marina Group, LLC of the Marina Property from B&M Holdings, LLC, B&M Holdings, LLC would convey an easement across the Marina Property in favor of SHM Boat Storage, LLC.

SHM Boat Storage, LLC is the owner of certain real property located on Highway 17 in Scotts Hill, North Carolina ("Dry Stack Storage Property"), and the members of SHM Boat Storage, LLC were the same as the members of SHM Marina Group, LLC.  It was understood by B&M Holdings, LLC that the easement in favor of SHM Boat Storage, LLC was essential to the success of the Marina Property, in that the intent was to integrate the Dry Stack Storage Property in with the operations of the Marina Property.  It was understood that the Marina Property could not produce sufficient cash flow to pay the debt against the Marina Property, without the successful financing and operation of the Dry Stack Storage Property.  It was essential that SHM Boat Storage, LLC obtain financing for the Dry Stack Storage Property, in order for the Deed of Trust on the Marina Property to be satisfied.  Before the Closing Date, a lender agreed to finance the Dry Stack Storage Property, subject to obtaining an easement across the Marina Property in favor of the Dry Stack Storage Property, and B&M Holdings, LLC was aware of this.

13.    At the time of the sale of the Marina Property by B&M Holdings, LLC to SHM Marina Group, LLC, B&M Holdings, LLC knew that the success of the Marina Property depended upon the integration of the Dry Stack Storage Property in with the operations of the Marina Property.

14.    An attorney for Defendant B&M Holdings, LLC prepared an easement document relating to the Dry Stack Storage Property for B&M Holdings, LLC to sign, and delivered a copy to SHM Marina Group, LLC (the "Easement").  A copy of the Easement is attached hereto as **Exhibit B.**  The Easement provides in pertinent part as follows:

> Further, the beneficiary, under the terms of the Deed of Trust aforementioned, has agreed to join in this Deed of Easement for the purpose of consenting to same and to acknowledge that the conveyance of said Easement does not violate the terms and conditions of the Due on Sale Clause contained in the Purchase Money Mortgage aforementioned or any other terms of the Deed of Trust.

15.     Following the Closing Date, B&M Holdings, LLC refused, without justification and in bad faith, to sign and deliver the Easement to SHM Marina Group, LLC.

16.     SHM Marina Group, LLC executed and delivered a Deed of Trust dated March 1, 2007 to Defendant Fuss Law Firm, PC in favor of B&M Holdings, LLC covering the Marina Property (the "Deed of Trust").  A copy of the Deed of Trust is attached hereto as **Exhibit C**. The Deed of Trust was recorded in the Office of the Pender County Register of Deeds.

17.     The Deed of Trust provides that it secures a Note to B&M Holdings, LLC in the principal amount of $9,000,000.00 dated March 1, 2007 from the grantor of the Deed of Trust, SHM Marina Group, LLC.

18.     The Deed of Trust was prepared by an attorney for Defendant B&M Holdings, LLC.

19.     On November 9, 2007, the Property was conveyed by SHM Marina Group, LLC to David White.  At the closing of that conveyance, David White paid $2,000,000.00 to SHM Marina Group, LLC, which paid off a loan which was from the entity that provided the financing to pay B&M Holdings, LLC $2,000,000 on the March 2, 2007 Closing Date.

20.     On or about February 4, 2008, the Property was conveyed by David White to Plaintiff.  Plaintiff is the current owner of the Property.

21.     Upon information and belief, B&M Holdings, LLC claims that it has a security interest in and lien upon the Marina Property to secure the Note.

22.     There is no promissory note in existence dated March 1, 2007 in the amount of $9,000,000.00 from SHM Marina Group, LLC to B&M Holdings, LLC.

23.     There is no promissory note in existence dated March 1, 2007 in the amount of $9,000,000.00 from Scotts Hill Marina Group, LLC to B&M Holdings, LLC.

24.     Upon information and belief, there is no promissory note in existence dated March 1, 2007 in any amount from any entity to B&M Holdings, LLC.

25.     SHM Marina Group, LLC did not execute a Note to B&M Holdings, LLC, at any time or for any amount.

26.     Plaintiff did not execute a Note to B&M Holdings, LLC, at any time or for any amount.

27.     The Deed of Trust does not accurately identify the obligation that B&M Holdings, LLC claims it secures.

28.     The Deed of Trust is invalid and unenforceable.

29.     The Note is invalid and unenforceable.

30.     B&M Holdings, LLC has no claim against Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays of the Court as follows:

1.     That the Court issue an Order stating that the Deed of Trust is void and invalid and that B&M Holdings, LLC has no claim against Plaintiff;

2      Alternatively, that the Court issue an Order stating that the Deed of Trust is void and invalid and that any claim that B&M Holdings, LLC has against Plaintiff based on the Note is unsecured; and

3.     For such other and further relief as this Court deems just and proper under the circumstances.

Dated: 10/22/08                    s/George M. Oliver
                                   Trawick H. Stubbs, Jr.
                                   N. C. State Bar #4221
                                   George M. Oliver
                                   N. C. State Bar #26587
                                   STUBBS & PERDUE, P.A.
                                   PO Box 1654
                                   New Bern, NC 28563-1654
                                   (252) 633-2700 (Phone)
                                   (252) 633-9600 (Facsimile)

<u>VERIFICATION</u>

STATE OF NORTH CAROLINA

COUNTY OF _New Hanover_

    I, David White, first being duly sworn, depose and say:

    That I am the Member-Manager of the Plaintiff in the foregoing action; that I have read the foregoing Complaint attached hereto; and that the contents of said Complaint are true to my own knowledge except as to those matters stated on information and belief and as to those matters I believe them to be true.

Name: David White
Member-Manager of the Plaintiff,
Easthaven Marina Group, LLC

Sworn to and subscribed
before me this the _22_
day of October, 2008.

NOTARY PUBLIC

My Commission Expires:

_July 15, 2011_

_Samantha Eaches_
Printed Name of Notary Public

SAMANTHA EACHES
Notary Public
Brunswick County
State of North Carolina
My Commission Expires July 15, 2011

**Exhibit A**

## PURCHASE MONEY
## PROMISSORY NOTE

WILMINGTON, N.C.

March 2, 2007

$9,000,000.00

FOR VALUE RECEIVED the undersigned maker(s), jointly and severally, promise to pay to B & M Holdings, LLC or order the principal sum of Nine Million DOLLARS ($9,000,000.00), Payments to be made at the address the legal holder hereof may designate. It is understood and agreed that additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this note and such advances will be added to the principal of this note and will accrue interest at the above specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows:

Interest shall accrue on the unpaid principal at the rate of seven (7) per cent per annum.

Within 180 days of the date of this note, obligor agrees to pay to obligee a principal payment of Two Million Dollars ($2,000,000.00) plus interest thereon at the rate of seven (7) per cent. Obligor may make said payment any time within the 180 day period. In the event obligor does not make that principal reduction payment in the amount of Two Million Dollars ($2,000,000.00), then the interest rate beginning on the 181st day measured from the date of this note shall be nine (9) per cent per annum.

The nine (9) per cent per annum interest rate shall continue in effect until obligor has made the Two Million Dollar ($2,000,000.00) reduction payment. Beginning on the day after the principal reduction payment is made, the interest rate per annum shall be seven (7) per cent.

Beginning on the 3rd month anniversary after the principal reduction payment is made, obligor shall begin to make quarterly interest payments on the remaining principal balance of this note. Said payments shall be computed at the rate of seven (7) per cent per annum.

On March 1, 2012, Obligor shall make one final payment of all unpaid principal and all accrued but unpaid interest.

Obligor shall have the right at any time during the term of this note to make partial or full prepayment of principal, without penalty.

Additional Provisions:

1. Unless the principal and interest are repayable in one single payment, the undersigned maker(s), jointly and severally, shall pay a late charge of 4% of the unpaid portion of any interest payment past due for 15 days or more. A default has occurred if any payment(s) are 15 days past due

2. If default occurs in payment of any installment of principal or interest hereof or if default occurs under the terms of any instrument securing this note, holder shall have 75 days to cure such default. After 75 days the holder may, without notice, declare the remainder of the debt at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The principal of this note and any part thereof, and accrued interest, if any, shall bear interest at the rate of 9 percent per annum after default until paid, except as otherwise expressly provided herein.

3. Upon default under this note or any instrument which secures its payment, the holder of this note may employ an attorney to enforce the holder's rights and remedies under the terms of this note and any instrument which secures its payment. Each maker, principal, surety, guarantor and endorser of this note hereby agrees to pay to the holder, jointly and severally, all reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default, including the holder's reasonable attorneys' fees and all court costs and expenses.

4. Each party to this note, whether principal, surety, guarantor or endorser, hereby waives presentment for payment, demand, protest and notice of dishonor, and all defenses on the ground of extension of time for

the payment hereof which may be given by the holder of the note to anyone who is obligated to pay this note.

5.  This note is to be governed and construed in accordance with the laws of the State of North Carolina. This note shall be the joint and several obligation of each maker.

6.  This note is given as evidence of purchase money indebtedness on real estate, and is secured by a Deed of Trust which is a FIRST lien upon the property therein described. The provisions of all security instruments securing this note are incorporated herein by reference.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand and seal or caused this Note to be signed and sealed in its name by a person or persons duly authorized, all as of the date of this Note.

BUSINESS ENTITY MAKER:                              INDIVIDUAL MAKER(S):

Scotts Hill Marina Group, LLC

BY: _____ (SEAL)                 _____ (SEAL)

Title: Member/Manager                               _____ (SEAL)

BY: _____ (SEAL)                 _____ (SEAL)

Title: Member/Manager

# **Exhibit B**



BK3 /ПGP G I09

FILED

07 MAR -2 PM 2: 13

JOYCE H. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

UNOFFICIAL

Recorded and Verified
Joyce M. Swicegood
Register of Deeds
Pender County, NC

**STATE OF NORTH CAROLINA**

**COUNTY OF PENDER**

**PURCHASE MONEY
DEED OF TRUST
AND SECURITY AGREEMENT**

## RECITALS:

**THIS DEED OF TRUST AND SECURITY AGREEMENT** (this "Deed of Trust") is made and entered into this 1st day of March, 2007, by and between **SHM Marina Group, LLC** a **North Carolina Corporation** (the **"Grantor"**); **Fuss Law Firm, PC**, Trustee, (the **"Trustee"**); and **B & M Holdings, LLC**, a **North Carolina Corporation** (the **"Beneficiary"**).

A.     Pursuant to the terms of a Purchase Money Promissory Note (the "Note") dated as of March 1, 2007 by and between Grantor and Beneficiary, Grantor is indebted to Beneficiary in the principal amount of Nine Million and No/100 Dollars ($9,000,000.00). This loan is evidenced by a Promissory Note (as the same may be amended or modified from time to time, the "Note") in the amount of $9,000,000.00, dated as of March 1, 2007, executed and delivered by Grantor to Beneficiary, which is payable in accordance with its terms, but in no event shall the principal amount of the Note mature later than March 1, 2012. Interest and other charges are payable as and at the rates specified in the Note, as it may be amended or modified from time to time.

B.     Grantor desires to secure the payment of the indebtedness evidenced by the Note and any modifications, renewals or extensions thereof, in whole or in part, including Fixed Interest; any payments or advances made by Beneficiary in accordance with the terms of this Deed of Trust; and the fulfillment and performance of the covenants and agreements set forth in the Note, in this Deed of Trust and in any of the other Loan Documents, by the conveyance of the Land and the other property described below.

## GRANTING CLAUSE

NOW, THEREFORE, in consideration of these premises and for the purposes aforesaid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has given, granted, bargained, sold, conveyed, assigned, and transferred and does hereby give, grant, bargain, sell, convey, assign and transfer unto Trustee, his heirs, administrators, legal representatives, successors and assigns, all of its right, title and interest in the tract(s) or parcel(s) of land lying and being in Pender County, North Carolina, and more particularly described in **Exhibit A** attached hereto (the **"Land"**).

TOGETHER with all buildings, structures and other improvements now or hereafter located on the Land, or any part or parcel thereof (collectively called the **"Improvements"**); and

TOGETHER with all rights, title and interest of Grantor in and to the minerals, shrubs, timber and other emblements now or hereafter located on the Land, or under or above the Land; and

Drawn by & return to:
Fuss Law Firm, PC
256-8252

BK3176PG110

TOGETHER with all and singular the tenements, hereditaments, easements, privileges and appurtenances thereunto belonging or in anywise appertaining to the Land, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and all in and to every part and parcel of the Land; and

TOGETHER with a security interest in all machinery, apparatus, equipment, fittings, fixtures, whether actually or constructively attached or to be attached to the Land or the Improvements, and articles of personal property of every kind and nature whatsoever (collectively called the "**Equipment**"), now or hereafter located in, upon or under the Land and used or usable in connection with any present or future operation of the Land or the Improvements and now owned or hereafter acquired by Grantor, including, but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating and communications apparatus; boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings; together with all building materials and equipment now or hereafter delivered to the Land or stored with other supplies to be used in construction of the Improvements on the Land, including without limitation, in a warehouse or at the factory of supplier, and intended to be installed therein, together with all warehouse receipts or other evidence of ownership; together with all additions thereto and replacements thereof (Grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by Trustee to confirm the conveyance, transfer and assignment of any of the foregoing); and

TOGETHER with any and all rents and security deposits which are now due or hereafter become due by reason of the renting, leasing and bailment of the Land, the Improvements or the Equipment; and

TOGETHER with any and all awards or payments (including but not limited to condemnation awards and insurance proceeds), including interest thereon, and the right to receive the same, as a result of: (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any street; or (c) any other injury, damage or casualty to or taking or loss of, or decrease in the value of, the Land, the Improvements or the Equipment, to the extent of all amounts which may be secured by this Deed of Trust at the date of receipt of any such award or payment by Trustee and of the reasonable attorneys' fees, costs and disbursements incurred by Trustee in connection with the collection of such award or payment.

TO HAVE AND TO HOLD all of the Land, the Improvements, the Equipment and all of the foregoing rights and privileges (collectively called the "**Property**") to Trustee, his heirs, administrators, legal representatives, successors and assigns, in fee simple forever, upon the trust and for the uses and purposes hereinafter set forth.

BK 3 1 76 PG 1 1 1

## WARRANTY OF TITLE

Grantor hereby covenants, warrants and represents that it is seised of the Property in fee, and that it has the right to convey the same in fee simple; that the Property is free and clear of all liens and encumbrances except as set forth in Exhibit B attached hereto; and that it will warrant and defend the title to the Property against the claims of all persons whomsoever. Grantor shall, upon request of Beneficiary, execute and deliver such further instruments or assurances as may be necessary or proper to carry out the true intent and purpose of this Deed of Trust.

### SPECIAL TRUST

THIS CONVEYANCE IS MADE UPON THIS SPECIAL TRUST, that if Grantor shall pay or cause to be paid the Note in accordance with the terms thereof, and any renewals, extensions or modifications thereof, and shall comply with all of the covenants, terms and conditions of this Deed of Trust and the other Loan Documents, then this conveyance shall be null and void and may be canceled of record at the request and cost of Grantor. But if at any time there shall be any default (whether by acceleration or otherwise) in the payment of any principal or Fixed Interest due under the Note, or if there shall be any default in the payment of any of the amounts required to be paid under this Deed of Trust or under any of the other Loan Documents, or if there shall be any default in any other of the terms and conditions of the Note, this Deed of Trust or any of the other Loan Documents, and if such default is not cured within any applicable notice and cure period, if any, specified in the Loan Agreement, then, at the option of Beneficiary, the entire indebtedness hereby secured shall immediately become due, payable and collectible without notice, regardless of maturity, and this Deed of Trust may be foreclosed by judicial proceedings, or Trustee or the successor of Trustee is hereby authorized and empowered to enter and take possession of the Property, and enter into contracts for the completion of the Property, personally or through his agent, and it shall be lawful for and the duty of Trustee, and he is hereby authorized and empowered, to expose to sale and to sell the Property, in whole or in part and in any order, at public sale for cash, in compliance with the requirements of the laws of the State of North Carolina relating to nonjudicial foreclosure sales in effect on the date such foreclosure is commenced; and at the time and place fixed for the sale to sell the Property, personally or through his agent, to the highest bidder for cash, free from any equity of redemption, homestead, dower or curtesy, and all other exemptions, all of which are hereby expressly waived. Upon such sale, Trustee shall execute a conveyance in fee simple to and deliver possession to the purchaser, and such sale by Trustee or his agent will create the relation of landlord and tenant at will between the purchaser at such sale and Grantor, or its successors, lessees and assigns. Without notice and upon default of such party in surrendering possession of the Property, such party may be removed by a writ of ejectment at the suit of either the purchaser or Trustee for the use and benefit of the purchaser. Trustee may sell the Equipment in whole or in part and in any order, together with the Land and the Improvements or separately, and the Equipment may be assembled for such sale by Trustee on the Land or elsewhere, in Trustee's sole discretion. Beneficiary may bid and become the purchaser at any sale under this Deed of Trust. After retaining not more than one percent (1%) of the gross proceeds of the sale as compensation to Trustee, plus all expenses incurred by him including, but not limited to, the reasonable attorneys' fees for legal services actually performed, Trustee shall apply the residue of the proceeds first to pay the expense of making, maintaining and executing this trust and protecting the Property, second to the payment of the indebtedness secured hereby and the balance, if any, shall be paid as required by law. Trustee may require the successful bidder at any sale to deposit immediately with Trustee cash or a certified check in an amount not to exceed ten percent (10%) of the bid, provided notice of such requirement is contained in the advertisement of sale. The bid may be rejected if the deposit is not immediately made, and thereupon the next highest bidder may be declared to be the purchaser. Such deposit shall be refunded without interest, in case a resale is had; otherwise, it shall be applied to the purchase price.

BK 3 PG 112

**GRANTOR FURTHER COVENANTS AND AGREES AS FOLLOWS:**

### 1.   Covenant to Pay Indebtedness and Taxes.

(a)      Grantor will pay the indebtedness secured hereby, including principal and Fixed Interest (as defined in each Note), as and when due, and will pay prior to delinquency all taxes (subject to the provisions of paragraph 1(b) hereof), assessments, levies and other charges of every character upon or against the Property.

(b)      Notwithstanding anything herein to the contrary, if Grantor in good faith believes that any tax, assessment or other charge payable by it shall be invalid, excessive or unenforceable in whole or in part, Grantor, upon written notice to Beneficiary in accordance with paragraph 9 below, may, at its sole expense, contest the validity, amount or enforceability of any such tax, assessment or other charge, provided that such tax is bonded off or other security satisfactory to Beneficiary has been posted so that the Property, or any part thereof, is not in danger of being forfeited. In such event, Grantor shall comply with all requirements of law as to conditions precedent to making any contest, and Grantor covenants to protect Beneficiary against foreclosure of any lien resulting from imposition of any tax, assessment or other charge which Grantor may contest.

### 2.   Insurance; Restoration.

Grantor will keep the buildings and other improvements now or hereafter located on the Property insured against loss or damage by fire, flood (if any of the Improvements is located in an area having "special flood hazards," as defined in the Federal Flood Protection Act of 1973), tornado and windstorm, with builder's risk or extended coverage, as applicable, against all risks in an amount not less than one hundred percent (100%) of the full replacement cost of such property, and against such other hazards as Beneficiary may reasonably require, including public liability coverage (combined single limit minimum of One Million and No/100 Dollars [$1,000,000.00]). All such insurance shall be in amounts satisfactory to Beneficiary if not otherwise specified above, but not less than the amounts sufficient to prevent any coinsurance liability, and shall be for the benefit of Beneficiary, with loss, if any, to be made payable in the policy or policies of insurance to Beneficiary as its interest may appear, the loss payable clauses to be in such form as Beneficiary may require. All such policies shall name Beneficiary as an additional insured and shall contain such provisions as Beneficiary may deem necessary or desirable to protect its interest, including but not limited to (a) a standard noncontributing mortgagee clause, and (b) a provision requiring that thirty (30) days' written notice be given to Beneficiary before any such policy is canceled or not renewed for any reason, including but not limited to nonpayment of premiums, or before there is any material change in the risks or coverages insured or the deductibles thereon. All insurance shall be in companies approved by Beneficiary with a Best's Insurance Guide rating of at least A:XII; and originals or certified true copies of the policies and renewals thereof shall, when issued, be immediately delivered to Beneficiary, and Grantor will pay all premiums for said policies. In the event of a transfer of the Property, including a transfer by foreclosure or deed in lieu of foreclosure, Grantor's interest in the insurance policies referred to above and any return premiums in connection therewith shall automatically be transferred to the successor in title to Grantor's interest in the Property. Each of the foregoing insurance policies shall be renewed and evidence thereof submitted to Beneficiary at least thirty (30) days prior to expiration. If Grantor fails or refuses to keep the Property so insured, Beneficiary may obtain such insurance without prejudice to its right to foreclose this Deed of Trust by reason of such default. All costs and expenses incurred by Beneficiary in obtaining such insurance shall be borne by Grantor. If any insurance policy or part thereof shall expire or be withdrawn, or become void or subject to cancellation by reason of the breach of any condition thereof, or become void by reason of the failure or impairment of the capital of any company in which the insurance shall be carried, or if for any reason whatsoever the insurance shall be unsatisfactory to Beneficiary, Beneficiary may procure such insurance as it deems necessary to protect its sole interests in the Property. If

BK3176PG113

Beneficiary buys the insurance, it is added to secured indebtedness and due on demand, with interest at 12%.

In the event of casualty or damage to or loss of any of the Property, Grantor will give immediate oral and written notice to Beneficiary, who may make proof of loss if not made promptly by Grantor. Beneficiary shall have the option, in Beneficiary's sole discretion, to apply all or any part of any insurance proceeds from any such casualty, damage or loss to the reduction of the indebtedness secured hereby in any order chosen by Beneficiary.

3.    **Beneficiary's Self-Help Remedy.**  If Grantor: (a) defaults in the payment of any tax, lien, assessment, charge or any utility charge, whether public, private, levied or assessed against the Property; (b) defaults in the payment of any insurance premiums; (c) fails to keep the Property in repair; (d) commits, suffers or permits waste; or (e) fails in the performance or observance of any other covenant, condition or term of this Deed of Trust; or if any action at law or equity or any proceeding affecting the title to the Property is commenced, Beneficiary at its option may, without waiving any rights or recourse against Grantor for such default and regardless of whether any period granted to Grantor in the Note, this Deed of Trust or any of the other Loan Documents to cure any such default has expired, pay said tax, lien, assessment, charge, utility charge or premium, perform any obligation or make such repairs and take such steps as are necessary to prevent or cure such waste, and may appear in any such necessary action as Beneficiary deems advisable in Beneficiary's sole discretion, and for any of said purposes, Beneficiary may, but shall not be obligated to, advance such sums of money as it deems necessary. All advances made by Beneficiary in connection therewith shall be secured by this Deed of Trust, and shall, upon demand, immediately be repaid by Grantor to Beneficiary with interest thereon at the rate of nine percent (9%), or the highest rate permitted by law, whichever is less, per annum. Beneficiary shall be the sole judge, in the exercise of reasonable discretion, of the legality, validity and priority of any such tax, lien, assessment, charge, claim and premium; of the necessity for any such action and of the amount necessary to be paid in satisfaction thereof. Beneficiary, subject to the rights, if any, of tenants or subtenants in lawful possession of the Property, is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such default, covenant, condition or term, without thereby becoming liable to Grantor or to any person in possession holding under Grantor.

4.    **Grantor's Property Maintenance Covenant.**  Grantor will keep and maintain the Property in first-class order, repair and condition; and it will not commit or permit any waste. Beneficiary shall have the right to inspect the Property at all reasonable times, and access thereto shall be permitted for that purpose to it or its authorized agents. Grantor shall neither permit nor perform any act which would impair the value of the Property or increase the risk of fire or other hazard to the Property. Nor shall Grantor remove any fixture owned by it located thereon unless said fixture is replaced by a fixture of equal value and utility. Grantor shall give notice orally and in writing to Beneficiary of any material loss or damage to the Property caused by any casualty.

5.    **Removal and Replacement of Trustee.**  Beneficiary shall at any time and from time to time have the irrevocable right to remove Trustee without notice or cause and to appoint his successor by an instrument in writing, duly acknowledged, in such form as to entitle such written instrument to be recorded in the Pender County Public Registry; and in the event of the death or resignation of Trustee, Beneficiary shall have the right to appoint his successor by such a written instrument; and upon the recordation of any such instrument, any substitute trustee so appointed shall be vested with the title to the Property, and shall possess all the powers, duties and obligations herein conferred on Trustee in the same manner and to the same extent as though he were originally named herein as Trustee.

BK3176PG114

6.    **Compliance With Laws: Zoning.** Grantor will promptly comply with any applicable legal requirements of the State of North Carolina or any other governmental entity, agency or instrumentality relating to the use or condition of the Property including, without limitation, all zoning conditions, and will not cause, suffer or permit any change in the zoning of the Property. Grantor shall comply with the terms of all restrictions, easements and utility agreements affecting the Property.

7.    **Appointment of Receiver.** Beneficiary shall have the right, after default in any of the terms, covenants or agreements contained in this Deed of Trust, or contained in the Note or any other Loan Document, and upon the expiration of any applicable grace period specified in the Loan Agreement, to the appointment of a receiver to take possession of the Property and to collect the rents and profits from the Property without consideration of the value of the Property or the solvency of any person liable for the payment of the amounts then owing; and all amounts collected by the receiver shall, after paying the expenses of the receivership which Beneficiary deems necessary, be applied to the payment of the indebtedness secured hereby; and Beneficiary, at its option, in lieu of an appointment of a receiver, shall have the right to do the same. If such receiver is appointed, or if there is a sale of the Property, as provided above, Grantor, or any person in possession of all or part of the Property thereunder, as tenant (except a tenant under a lease that is superior to the lien of this Deed of Trust) or otherwise, shall become a tenant at will of the receiver or of the purchaser and may be removed by a writ of ejectment, summary or other lawful remedy. Grantor will pay to Beneficiary upon demand all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions contained in this paragraph 7 and all such expenses shall be secured by this Deed of Trust and shall bear interest at the rate of nine percent (9%), or the highest rate permitted by law, whichever is less, per annum from the date advanced until paid.

8.    **No Waiver of Default or Remedy.** No delay or forbearance by Beneficiary in exercising any or all of its rights under this Deed of Trust or rights otherwise afforded by law shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default as set forth herein or in the event of any subsequent default hereunder, and all such rights shall be cumulative. In case Beneficiary or Trustee voluntarily or otherwise shall become a party to any suit or legal proceeding to protect the Property or to protect the lien of this Deed of Trust, Trustee and Beneficiary shall be indemnified and saved harmless and shall be reimbursed by Grantor for any amounts paid, including all costs, charges and reasonable attorneys' fees incurred in any such suit or proceeding, and those amounts shall be secured by this Deed of Trust and its payment enforced as if it were a part of the original debt.

9.    **Notice.** Any notice required or permitted to be given shall be deemed to have been given if and when sent by prepaid registered or certified mail, return receipt requested, addressed to:

Grantor:           SHM Marina Group, LLC
                   17441 Market Street, Suite H
                   Wilmington, NC 28411
Beneficiary:       B & M Holdings, LLC
                   208 Beach Road, N
                   Wilmington, NC 28411

or at such other address as Grantor or any Beneficiary may designate in writing to the other from time to time.

`10.    **Continuance Upon Partial Foreclosure.** The obligations of the Note, this Deed of Trust and the other Loan Documents shall continue until the entire indebtedness secured herein is paid, notwithstanding any action or actions of partial foreclosure which may be brought to recover any amount or amounts for installments of principal, Interest, taxes, assessments, levies, charges, insurance premiums

BK 3 1 7 6 PG. 1 1 5

or other amounts due and payable under the provisions of the Note, this Deed of Trust and the other Loan Documents.

11.     **Grantor's Covenant of Performance as Lessor.** Grantor will faithfully perform the covenants of the lessor contained in any present or future lease by it of any part or all of the Property, and in pursuance thereof, will neither do anything nor neglect to do anything, nor permit anything to be done which would cause the modification or termination (other than for tenant default) of any of said leases, or of the obligation of any tenant, his or its successors and assigns, or the rents provided for therein. To the extent permitted by law, all leases shall be subordinate or superior to the lien of this Deed of Trust, at the election of Beneficiary. To the extent permitted by law, if at any time there is any conflict between any provision of this Deed of Trust and any provision of the aforesaid leases, then such provision of this Deed of Trust shall govern and apply.

12.     **Assignment of Leases and Rents.** Beneficiary hereby consents to the lease, licensing and permitting of marina slips with no additional written consent required. If Grantor enters into any such leases, Grantor hereby assigns and sets over to Beneficiary all leases and all rents and security deposits hereafter accruing from the Property as additional security for the indebtedness secured hereby, and Beneficiary is given a prior and continuing lien thereon. Grantor hereby appoints Beneficiary its attorney to collect such rents with or without suit, and to apply the same, less expenses of collection, to said indebtedness and to repairs in such manner as Beneficiary may elect; provided, that until there occurs a default by Grantor in the performance of its agreements and undertakings under this Deed of Trust or under the Note, Grantor may continue to collect and enjoy said rents as they fall due without accountability to Beneficiary. This assignment and power of attorney shall apply to all leases, security deposits, rentals and other amounts received from tenants in the future, whether by present or by future owners of the Property; shall be in addition to other remedies herein provided for in event of default; and may be put into effect independently or concurrently with any of such remedies, but no liability shall attach to Beneficiary on account of failure or inability to collect any such rents.

13.     **Severability.** If any clauses or provisions contained in this Deed of Trust shall operate or would prospectively operate to invalidate this Deed of Trust in whole or in part, then such clauses and provisions only shall be held for naught, as though not contained in this Deed of Trust, and the remainder of this Deed of Trust shall remain operative and in full force and effect.

14.     **Definition of Terms.** The words "Grantor," "Trustee" and "Beneficiary" shall include all individuals, corporations and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and permitted assigns of the parties hereto; and all those holding under any of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. The term "Beneficiary" and the phrase "holder of the Note secured hereby" shall be treated as interchangeable.

15.     **Security Agreement.** Grantor hereby grants to Beneficiary to secure payment and performance of the indebtedness evidenced by the Note a security interest in all portions of the Property that are or are deemed to be personal property and not a part of the realty. Grantor covenants and agrees that the terms and conditions of this Deed of Trust, insofar as they govern the relationships between Grantor on the one hand and Trustee and Beneficiary on the other, shall be deemed to apply appropriately as the terms and conditions of a Security Agreement under the Uniform Commercial Code (the "UCC") as adopted in North Carolina, the lien of which shall be perfected by filing financing statements showing the Beneficiary's interest as a lienholder or creditor with respect to any class of items constructed, installed, placed, planted or growing on the Property or related to or arising out of the operation of the Property and described in any UCC financing statements filed by or on behalf of Beneficiary. In the

BK3176PG116

event of default, Beneficiary, as secured party, and Grantor, as debtor, shall have, without limitation, all of the rights and remedies provided for in the UCC.

16.     **Subrogation of Beneficiary to Rights of Third Parties**.     Beneficiary shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid by Beneficiary as provided in paragraph 3 above.

17.     **Releases and Extensions**.     Without affecting the liability of any person (other than any person released pursuant to the provisions of this paragraph) for payment of any indebtedness secured hereby, and without affecting the priority or extent of the security title hereof upon any property not specifically released pursuant hereto, Beneficiary may at any time and from time to time (a) release any person liable for payment of any indebtedness secured hereby; (b) extend the time or agree to alter the terms of payment of any of the indebtedness; (c) accept additional security of any kind; (d) release any portion of the Property; or (e) consent to the creation of any easement on or over the Property or any covenants restricting the use or occupancy thereof.

18.     **Further Documentation**.     At any time, and from time to time, upon request by Beneficiary, Grantor will make, execute and deliver or cause to be made, executed and delivered, to Beneficiary any and all other further instruments, certificates and other documents, including without limitation financing statements with respect to all additions and replacements of the Property, as may be necessary in order to effectuate, complete, enlarge or perfect or to continue and preserve the obligation of Grantor under the Note and the priority of this Deed of Trust. Upon any failure by Grantor to execute and deliver such instruments, certificates and other documents within thirty (30) days after receipt of written request therefor, Beneficiary may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Beneficiary the agent and attorney-in-fact of Grantor so to do.

19.     **Governing Law**.     This agreement is delivered and is intended to be performed in the State of North Carolina and shall be construed in accordance with the laws of said State.

20.     **Election of Remedies**.     The rights of Trustee and Beneficiary, granted and arising under the clauses and covenants contained in this Deed of Trust, the Note and the other Loan Documents, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Trustee and Beneficiary may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under this Deed of Trust, the Note and the other Loan Documents, and preservation of security as provided at law.  No act of Trustee or Beneficiary shall be construed as an election to proceed under any one provision, or an election of remedies to the bar of any other remedy allowed at law or in equity.

21.     **Condemnation**.     Grantor agrees to notify Beneficiary immediately in writing of the commencement of any eminent domain or condemnation proceedings affecting the Property.  All monies and awards payable as damages and/or compensation, for the taking of title to or possession of, or for damages to, or on account of change of grade affecting, any portion of the Property by reason of any condemnation, eminent domain, change of grade, or other proceeding shall at the sole option and discretion of Beneficiary be paid to Beneficiary, unless otherwise expressly agreed in writing between Grantor and Beneficiary.  Such moneys and awards are hereby assigned to Beneficiary, and judgment therefor shall be entered in favor of Beneficiary, and when paid may, at the option of Beneficiary: (a) be applied, in whole or in part, by Beneficiary upon any indebtedness (including accrued but unpaid interest and other amounts secured hereby or payable under the Note or hereunder) or obligation secured hereby, whether the same be matured or unmatured, and in such order as Beneficiary may determine; (b) be used in whole or in part to replace or restore the Property to a condition satisfactory to Beneficiary; (c) be used

in whole or in part to fulfill any of the covenants contained herein as Beneficiary may determine; or (d) be released to Grantor. Grantor hereby covenants and agrees, upon request by Beneficiary, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid moneys and awards to Beneficiary free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

22.   **Liens**. Grantor agrees to ensure that no liens are filed against the Property by reason of any services or materials supplied thereto, whether such services or materials are supplied to Grantor or to some person, firm or corporation in possession of all or a part of the Property through or under Grantor, or, if any such lien is filed against all or part of the Property, to, within fifteen (15) days after notice of the filing of any lien, cause the same to be discharged by deposit, bond, order or otherwise.

23.   **Grantor's Estoppel**. Grantor, upon ten (10) days' prior written notice, shall furnish Beneficiary a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest.

24.   **Grantor's Waivers**. To the extent permitted by law, the Grantor hereby waives the right of redemption, any homestead exemptions and any right of appraisement.

25.   **Hazardous Wastes**. Grantor hereby represents, warrants, covenants and agrees as follows:

(a)   To the best of Grantor's knowledge and except as set forth in the environmental reports provided to Beneficiary, (i) No Hazardous Materials (as defined below) will be unlawfully stored or otherwise unlawfully located in, on or under the Property, and no part of the Property, including the groundwater located thereon and thereunder, is presently unlawfully contaminated by any such substances; (ii) no improvements on the Property contain any friable asbestos or substances containing asbestos and deemed hazardous by any federal, state or local laws, regulations or orders respecting such material; (iii) there have been no releases by the Grantor or any other party of Hazardous Materials on the Property; and (iv) the foregoing statements are true and correct with respect to all of the real property adjoining any of the Property.

(b)   To the best of the Grantor's knowledge, the Property has never been used as or for a mine, a landfill, a dump or other disposal facility, a gasoline service station, or a petroleum products storage facility, and none of the Property is located on a site which, pursuant to any Environmental Law (as defined below), has been placed on the "National Priorities List" or "CERCLIS List" (or any similar state list) of hazardous waste sites.

(c)   To the best of Grantor's knowledge and except as set forth in the environmental reports provided to Beneficiary, there are no underground storage tanks situated on the Property and no subsurface storage tanks have ever been situated on the Property.

(d)   All activities and operations of the Grantor meet the requirements of all applicable Environmental Laws, as defined below.

(e)   The Grantor has never sent a Hazardous Material to a site which, pursuant to any Environmental Law, (1) has been placed on the "National Priorities List" of hazardous waste sites, or (2) which is subject to a claim, an administrative order or other request to take "removal" or "remedial" action, as defined in any Environmental Law, or to pay for the costs of cleaning up such a site.

BK 3 1 7 6 PG 1 1 8

(f)     The Grantor is not involved in any suit or proceeding and has not received any notice from any governmental agency or authority with respect to a release of Hazardous Materials and has not received notice of any claims from any person or entity relating to Property damage or to personal injuries from exposure to Hazardous Materials.

(g)     The Grantor has timely filed all material reports required to be filed, has acquired all necessary and material certificates, approvals and permits and has generated and maintained in all material respects all required data, documentation and records under all Environmental Laws.

(h)     The Grantor shall not, at any time, in violation of any Environmental Law, bring onto the Property any Hazardous Materials, and if any such substance is brought or found thereon, it shall be immediately removed, with proper disposal, and all required environmental cleanup procedures shall be diligently undertaken pursuant to all Environmental Laws by Grantor at its sole cost and expense, and the Grantor's obligations hereunder shall survive any foreclosure of this Deed of Trust.

(i)     The Grantor shall promptly, after any officer of the Grantor learns or obtains knowledge of the occurrence thereof, give written notice to the Beneficiary of receipt of any written notices of violation or noncompliance from any governmental agency or authority with respect to Environmental Laws.

(j)     The Grantor shall indemnify the Beneficiary pursuant to an Environmental Indemnity Agreement dated the date hereof by Grantor in favor of Beneficiary, which Environmental Indemnity Agreement is hereby incorporated herein by reference as if fully set forth herein. Notwithstanding the foregoing, the indemnity of Grantor shall not extend to any Hazardous Materials first placed on the Property following the date that Beneficiary or its designee first acquires possession of the Property, whether by foreclosure, deed in lieu of foreclosure, or otherwise.

(k)     Beneficiary shall have, and Grantor hereby grants to Beneficiary, the right to enter upon the Property to verify compliance by Grantor with the terms of this paragraph 25 and to conduct such environmental assessments and audits as Beneficiary shall deem advisable; *provided, however,* GRANTOR ACKNOWLEDGES THAT IT SHALL HAVE THE SOLE RESPONSIBILITY FOR ALL HAZARDOUS WASTE HANDLING PRACTICES AND ENVIRONMENTAL PRACTICES, AND GRANTOR HAS FULL DECISION MAKING POWER WITH RESPECT THERETO.

As used herein, "Hazardous Materials" means any substances or materials (i) which are or become defined as hazardous wastes, hazardous substances, pollutants, contaminants or toxic substances under any Environmental Law; (ii) which are toxic, explosive, corrosive, flammable, infectious, radioactive, mutagenic or otherwise hazardous and are or become regulated by any governmental agency or authority; (iii) the presence of which require investigation or remediation under any Environmental Law or common law; (iv) which are deemed to constitute a nuisance, a trespass or pose a health or safety hazard to persons or neighboring properties; (v) which include, without limitation, underground or aboveground storage tanks, whether empty, filled or partially filled with any substance; and/or (vi) which contain, without limitation, asbestos, polychlorinated biphenyls, urea formaldehyde foam insulation, petroleum hydrocarbons, petroleum derived substances or waste, crude oil or any fraction thereof, nuclear fuel, natural gas or synthetic gas.

As used herein, "Environmental Laws" shall mean any and all federal, state and local laws, statutes, ordinances, rules, regulations, permits, licenses, approvals, guidances, interpretations, orders of courts and governmental agencies or authorities and all other legal requirements relating to the protection of human health or the environment, including, but not limited to, requirements pertaining to the

BK 3 1 7 6 PG 1 9

manufacture, processing, distribution, use, treatment, storage, disposal, transportation, handling, reporting, licensing, permitting, investigation or remediation of Hazardous Materials. Environmental Laws include, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 *et. seq.*) ("CERCLA"), the Hazardous Material Transportation Act (49 U.S.C. § 1801 *et. seq.*), the Resource Conservation and Recovery Act (42 U.S.C. § 6901 *et. seq.*) ("RCRA"), the Federal Water Pollution Control Act (33 U.S.C. § 1251 *et. seq.*), the Clean Air Act (42 U.S.C. § 7401 *et. seq.*), the Toxic Substances Control Act (15 U.S.C. § 2601 *et. seq.*), the Safe Drinking Water Act (42 U.S.C. § 300, *et. seq.*), the Environmental Protection Agency's regulations relating to underground storage tanks (40 C.F.R. Parts 280 and 281), and the Occupational Safety and Health Act (29 U.S.C. § 651 *et. seq.*) ("OSHA"), as such laws have been or are in the future amended or supplemented and any analogous future federal, or present or future applicable state or local statutes, and the rules and regulations promulgated thereunder.

     26.    **Captions**. All captions used herein are for organizational purposes only and in no way limit, expand or otherwise affect the meaning or effect of the provisions hereof.

     27.    **Sale of Premises**. Grantors agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law. Beneficiary, at its own option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premise.

     28.    **Other Terms**. The terms and conditions of the Promissory Note dated March 1, 2007, shall be incorporated herein as if set forth at length.

     Grantor agrees that this Purchase Money Deed of Trust shall be in first lien position and shall not be subordinate to any other lien or encumbrance on the collateral described in Exhibit A.

     Grantor further acknowledges and agrees that there shall be no conveyance of any property rights, future rights or property interests to any portion of the collateral until such time as all amounts due under the terms of the Purchase Money Promissory Note and Purchase Money Deed of Trust have been paid in full; or UNTIL SUCH TIME AS BENEFICIARIES HAVE GRANTED TO GRANTOR RELEASE DEED IN EXCHANGE FOR A RELEASE FEE UPON THE COLLATERAL DESCRIBED IN THE RELEASE DEED.

     Grantor shall have the right, at any time, without penalty, to make partial prepayments of all amounts due or full prepayments of all amounts due under the terms of the Purchase Money Promissory Note and Purchase Money Deed of Trust.

BK 3 1 7 6 PG 1 20

IN WITNESS WHEREOF, Grantor has executed this Deed of Trust and Security Agreement effective as of the day first written above.

SHM Marina Group, LLC

BY: _____
Manager

BY: _____
Manager

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I certify that the following person(s) personally appeared before me this day, and; each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

STEVEN A. SHUTTLEWORTH + DAVID WHITE
_____
Name(s) of principal(s)

Witness my hand and official seal, this the 2⁺ day of MARCH , 2007.



Lynne D. Brooks
Official Signature of Notary

LYNNE D. BROOKS , Notary Public
Notary's printed or typed name

My commission expires: 7/24/11



BK 3 I .76 PG I 2 I

Exhibit "A" Legal Description

TRACT ONE:  Parcel #3280-26-2979-0000

BEGINNING at a new railroad spike at the intersection of the easterly right-of-way line of Scotts
Hill Loop Road (60 foot right-of-way), also known as S.R. 1571, with the southerly right-of-way
line of Simmons Drive (60 foot right-of-way), also known as S.R. 1581, as shown on a map
entitled "Simmons Drive from S.R. 1571 to Dead End dated 4/10/61 surveyed by E.G. Turleton
and on file in the office of the right-of-way department of N.C.D.O.T, Division Three,
Wilmington, NC. Said Beginning spike being on a curve having a radius of 477.46 feet; running
thence from said Beginning spike:

1. With the arc of said curve and with the easterly right-of-way line of said Scotts Hill Loop
Road, as it curves to the South to an old concrete right-of-way monument that is S 27-00-00 E a
chord distance of 60.61 feet from the preceding point; thence,

2. Continuing with the arc of said curve and with the easterly right-of-way line of said Scotts
Hill Loop Road, as it curves to the South to an old iron pipe at the southerly end of said curve
that is S 10-28-54 E a chord distance of 212.85 feet from the preceding point; thence,

3. S 04-21-06 W 94.18 feet with said easterly line of Scotts Hill Loop Road to an old iron pipe;
thence,

4. S 58-06-37 E 72.03 feet to an old iron pipe at the western most corner of Lot 3 as shown on a
map of "Division of Bertha P. Blake" recorded in Map Book 14, Page 59, Pender County
Registry;, thence,

5. N 57-58-00 E 183.20 feet with a northerly line of said Lot 3 to an old iron pipe; thence,

6. S 87-55-10 E 34.90 feet with another northerly line of said Lot 3, to a new iron pipe; thence,

7. S 48-23-28 E 133.00 feet with another northerly line of said Lot 3, and with a northerly line of
Lot 4, of said Blake Division to an old iron pipe; thence,

8. S 42-33-25 E 189.76 feet with another northerly line of said Lot 4, and with the northerly line
of Lot 5 of said Blake Division to an old iron pipe near the mean high water line of Topsail
Sound; thence,

9. Continuing S 42-33-25 E 2.05 feet to a point on the mean high water line of said Topsail
Sound; thence,

10. Crossing the access Channel of Scotts Hill Marina to a point on said mean high water line
that is N 76-41-42 E 173.79 feet (a tie line) from the preceding point; thence,

11. Continuing with the meanders of said mean high water line N 71-28-02 E 9.90 feet; N
54-40-04 E 22.65 feet; N 34-27-47 E 32.81 feet, and N 32-44-36 E 28.17 feet to a point on a
southerly line of a Tract deeded to Bradley Benson by deed recorded in Book 1148, Page 10, said
Registry; thence,

12. N 46-05-13 W 49.15 feet to an old iron pipe in said Benson line; thence,

13. N 46-05-13 W 225.81 feet to an old iron pipe at the western most corner of said Benson
Tract. Last said point being in an easterly line of a tract deeded to Admah Lanier by deed
recorded in Book 1150, page 175, said Registry; thence,

14. S 34-29-35 W 8.02 feet with the easterly line of said Lanier tract to an old iron pipe; thence,

15. N 56-29-23 W 198.94 feet with the westerly line of said Lanier tract to an old iron pipe;
thence,

16. N 33-23-37 E 100.02 feet with the westerly line of said Lanier Tract to an old iron pipe in
the southerly line of said Simmons Drive; thence,

BK 3176 PG 122

17. N 55-43-54 W 167.39 feet with the southerly line of said Simmons Drive to an old concrete right-of-way monument at the easterly end of a curve having a radius of 100.53 feet; thence,
18. With the arc of last said curve and with the southerly right-of-way line of said Simmons Drive, as it curves to the South, to a new iron pipe at the westerly end of last said curve that is N 80-44-41 W a chord distance of 79.98 feet from the preceding point; thence,
19. S 75-49-06 W 245.52 feet, passing through an old concrete right-of-way monument at 184.36 feet, to the point of Beginning. being that same parcel conveyed to Grantors herein in Book 1302, Page 167, Pender County Registry.
2570 Scotts Hill Loop Road

TRACT TWO: Parcel #3280-16-9955-0000
BEING all of Lot 4 on Scotts Hill Loop Road, GW Crowley Subdivision, Topsail Township as shown on map thereof recorded in Map Book 7, Page 108, Pender County Registry, reference to said map being hereby made for a more particular description.
TOGETHER WITH that certain easement recorded in Book 386, Page 448, Pender County Registry.
2573 Scotts Hill Loop Road

TRACT THREE: Parcel #3280-17-9012-0000
BEING all of Lot 5 on Scotts Hill Loop Road, GW Crowley Subdivision, Topsail Township as shown on map thereof recorded in Map Book 7, Page 108, Pender County Registry, reference to said map being hereby made for a more particular description.
TOGETHER WITH that certain easement recorded in Book 386, Page 448, Pender County Registry.
2591 Scotts Hill Loop Road



# **Exhibit C**

Prepred by Fuss Law Firm, PC
without title certification

Tax Parcel Number:

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

DEED OF EASEMENT

THIS DEED OF EASEMENT, made and entered into this _____ day of _____, 2007, by and between SHM Marina Group, LLC of Pender County and State of North Carolina, (hereinafter referred to as Grantors), and SHM Boat Storage, LLC, a North Carolina Limited Liability Company located in New Hanover County, State of North Carolina, their heirs, successors and assigns, (hereinafter referred to as Grantees), whose mailing address is _____.

## WITNESSETH

SHM Boat Storage, LLC, is the owner of that tract or parcel of property described in Exhibit A, hereto attached and incorporated herein by reference.

SHM Marina Group, LLC are the owners of that tract or parcel of property described in Exhibit B hereto attached and incorporated herein by reference.

Grantors, for good and valuable consideration to be paid by the Grantees, the receipt and sufficiency of which is hereby acknowledged, has and by these presents does grant, bargain and convey unto the Grantees, its heirs, successors and assigns, a perpetual easement over, under, on and across the tract or parcel of property described in Exhibit A, for the use of owners and future owners, lessees and/or business invitees of the owners of the property described in Exhibit B, subject to the terms and conditions stated hereunder. The terms and conditions under which this Easement is granted are as follows:

a)      The purpose of the Easement granted to Grantee is for the use and utilization of the boat ramp on Grantor's property along with parking areas on Grantor's property so that Grantee's, it's heirs, successors and assigns, has access to the waters and marina waters of Grantor for

access to the Intracoastal Waterway;

b)      The additional purpose of the Easement is to grant Grantee, its heirs, successors and assigns, the right to use and utilize Grantor's property for parking and access, ingress and regress, over the subject property to the Clubhouse and the use of the Clubhouse on Grantor's property;

c)      The existence of the perpetual Easement granted herein shall be contingent upon the faithful payment of an annual fee to Grantor. Said fee shall be made in quarterly payments and set at $52,000.00 per year for the first five years. The annual fee for each consecutive five year period shall be mutually agreed upon through negotation between Grantor and Grantee. The marina fee shall be reasonable and commensurate with the use. The annual fee shall be renegotiated every fifth year for the successive five year periods. Notwithstanding the foregoing, it is specifically acknowledged and agreed between the parties that the quarterly fees shall be prorated until such time as Grantee achieves 100 per cent occupancy of it's dry stack storage facility. The proration shall be based upon the annual fee, the number of dry stack slips, and current usage. For example, if the total of the "Dry Stack" storage slips is 200 and only 20 slips have been leased and/or sold for a particular quarter, then the quarterly payment shall be 10 per cent of that stated herein;

d)      In the event Grantee fails to make a quarterly payment and that default is not cured within 30 days of the date when due, then, this Easement shall automatically terminate.

e)      Failure of the Grantor and Grantee to agree upon the annual fee to be paid for successive five year periods shall not act as a termination of this Easement. Grantee shall be required to continue making the quarterly payment which was paid during the preceding five years and the matter shall be submitted to mediation. Once the new fee is set, then Grantee shall have six months to pay the difference between the old fee and the new fee.

f)      The Easement granted herein shall inure to the benefit of Grantee's successors, heirs and assigns, lessees and business invitees.

g)      The parties hereto acknowledge and agree that the Easement granted herein is nonspecific as to location in that it is intended by the parties that the Easement be over that portions of Grantor's property necessary to serve the purposes of the Easement.

To have and hold, the aforesaid Easement and all privileges and appurtenances thereto belonging to the Grantees and their heirs, successors and assigns, lessees and business invitees, forever.

The Grantees agree to repair any damage to Grantor's property caused by the negligent acts or omissions of the Grantees or their heirs, successors, assigns, lessees or business invitees.

The Parties further agree that this Easement shall continue so long as the aforesaid terms and conditions have been complied with by Grantees.

It is further agreed between Grantor and Grantee that Grantee shall have the right to terminate this easement at any time by giving Grantor at least 30 days written notice prior to the date of the next quarterly installment for the given Easement year.

It is further acknowledged and agreed between the parties that this Easement is nonexclusive. Grantor, it's heirs, successors and assigns, lessees and business invitees have the right to utilize the property of Grantor.

And the Grantors covenant with the Grantors are seized of the premises in fee simple, have the right and authority to convey the said Easement, that title to them is free and clear of all encumbrances, except for a certain Purchase Money Deed of Trust recorded at Book 3176 Page 109 of the Pender County Registry and that the Grantors will warrant and defend the title against the lawful claims of all persons whomsosever. Further, the beneficiary, under the terms of the Deed of Trust aforementioned, has agreed to join in this Deed of Easement for the purpose of consenting to same and to acknowledge that the conveyance of said Easement does not violate the terms and conditions of the Due on Sale Clause contained in the Purchase Money Mortgage aforementioned or any other terms of the Deed of Trust.

IN WITNESS WHEREOF, the Grantees and Grantors have set their hands and seals the day and year first above written, intending to be legally bound.

_____ (SEAL)
        , Grantee

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I certify that the following person(s) personally appeared before me this day, and; each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

_____
                *Name(s) of principal(s)*

Witness my hand and official seal, this the _____ day of _____, 2006.


(Official Seal)                    _____
                                   *Official Signature of Notary*

                                   _____ , Notary Public
                                   *Notary's printed or typed name*

My commission expires: _____

Consent in Joinder:

Whereas, _____, the beneficiary under the terms of the Deed of Trust at Book _____ Page _____ of the Pender County Registry, by and through its manager, hereby executes this document to evidence its consent to the conveyance of the Easement contained herein, and further to acknowledge that the conveyance of the Easement does not violate the terms and conditions of the aforementioned Deed of Trust.

_____
, Beneficiary

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I certify that the following person(s) personally appeared before me this day, and; each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

_____
*Name(s) of principal(s)*

Witness my hand and official seal, this the _____ day of _____, 2006.

(Official Seal)                    _____
                                   *Official Signature of Notary*

                                   _____ , Notary Public
                                   *Notary's printed or typed name*

                                   My commission expires: _____

EXHIBIT "A"
SHM Boat Storage, LLC
Legal Description

BEGINNING at a new pk nail in the centerline of US 17 approximately 1.3 miles a measured northeastwardly along the centerline of US 17 from the New Hanover County and Pender County line, said pk nail being located S 43-52-22 E 89.05 feet from a point in the centerline of the Seaboard Coastline Railroad tracks, Wilmington to New Bern Branch, said point being located 4067.81 feet as measured along the centerline of said railroad tracts in a southwesterly direction from an existing nail in a crosstie at right angles to SCLRR mile post CB 258 or W-14, the centerline at said railroad tracks having a bearing at the point 4067.81 feet southwesterly from the above mentioned mil post of N 63-41-36 E; running thence from said beginning point in the centerline of US 17, N 43-52-22 W 13.48.12 feet with the Julian A. Altobellis line to an existing iron pipe in the International Paper Company line, passing over the centerline of the Seaboard Coastline Railroad tracks at 89.05 feet passing over an inline new subsurface iron pipe in the northwestern right of way of said railroad, 62.5 feet from the centerline thereof at 154.61 feet and passing over an inline new subsurface iron pipe at 514.61 feet; running thence with the above mentioned International Paper Company line N 42-22-33 E 378.58 feet to an existing iron pipe, corner of D P Rochelle; running thence with the DP Rochelle line  S 48-40-24 E 1538.54 feet to a new pk nail in the centerline of US 17 passing over an inline new iron pipe at 243.24 feet, passing over an inline new iron pipe at 921.00 feet, passing over an inline existing concrete monument in the above mentioned northwestern right of way line of the Seaboard Coastline Railroad at 1379.25 feet and passing over an inline new iron pipe in the centerline of said railroad tracks at 1446.83 feet; running thence from said pk nail with the centerline of US 17 S 63-41-00 W 531.27 feet to the beginning and containing 12.7492 acres net after the exclusion of that portion of the above-described tract that is within the bounds of the right of way of the Seaboard Coastline Railroad and US 17,  and as surveyed by Johnnie C. Garrason, RLS No L-1347 in 1981 and 1982 with bearings based on Map Book 16 Page 46 of the Pender County Registry.

TOGETHER WITH  that acreage contained in the Variable Width Access, Utility & Drainage Easement described as follows:
A tract of land located in Topsail Township, Pender County, NC being more particularly described as follows: beginning at a point in the southeastern line of lands of WS Land Investments, LLC et al as shown on a plat recorded in map Book 40 at page 75 of the Pender County Registry and in the northwestern line of the Emil H. Ruegner tract as described in Book 932 at Page 47 of the said registry, said beginning point being located S 42-21-18 W 15.07 feet from an iron pipe marking the northernmost corner of said Ruegner Tract, said last mentioned iron pipe being located S 42-24-10 W 144.98 feet from a concrete monument marking the easternmost corner of the above referenced WS Land Investment, LLC tract, running thence from said beginning point so located S 48-39-24 E 740.46 feet; thence with a non tangent curve to the right or southwest said curve having a radius of 380.00 feet to a point located S 00-05-43 E a chord distance of 285.14 feet from the preceding point; thence S 21-56-27 W 5.78 feet thence with a curve to the left or south, said curve having a radius of 260 feet to a point located S 10-57-58 E a chord distance of 282.50 feet from the preceding point; thence S 43-52-23 E 46.42 feet to a point in the current right of way line of US Highway #17 (right of way width varies) thence with said right of way S 64-41-45 W 42.01 feet to an iron pipe marking the southernmost corner of the above mentioned Ruegner tract and the easternmost corner of a tract conveyed to CP&L Company as recorded in Deed Book 1504 page 147 of said registry, thence leaving said right of way and with the dividing line between said Ruegner and CP&L tracts N 43-52-22 W 232.67 feet; thence  with a non tangent curve to the right or northeast, said curve having a radius of 360 feet to a point located N 05-48-20 E a chord distance of 200.09 feet from the preceding point; thence N 21-56-27 E 53.78 feet, thence with a curve to the left or North, said curve having a radius of 280 feet to a point located N 13-21-29 W a chord distance of 323.59 feet from the preceding point; thence N 48-39-24 W 571.94 feet to a point in the dividing line between the above mentioned WS Land Investments LLC tract and the Ruegner tract, thence with said dividing line N 42-21-18 E 60.00 feet to the point of beginning, being an access utility and drainage easement of varying width containing 2.407 acres more or less and being a portion of the above referenced Ruegner tract.

EXHIBIT "B"
SHM Marina Group, LLC
LEGAL DESCRIPTION

TRACT ONE:  Parcel #3280-26-2979-0000
BEGINNING at a new railroad spike at the intersection of the easterly right-of-way line of Scotts Hill Loop Road (60 foot right-of-way), also known as S.R. 1571, with the southerly right-of-way line of Simmons Drive (60 foot right-of-way), also known as S.R. 1581, as shown on a map entitled "Simmons Drive from S.R. 1571 to Dead End dated 4/10/61 surveyed by E.G. Turleton and on file in the office of the right-of-way department of N.C.D.O.T, Division Three, Wilmington, NC. Said Beginning spike being on a curve having a radius of 477.46 feet; running thence from said Beginning spike:
1.  With the arc of said curve and with the easterly right-of-way line of said Scotts Hill Loop Road, as it curves to the South to an old concrete right-of-way monument that is S 27-00-00 E a chord distance of 60.61 feet from the preceding point; thence,
2.  Continuing with the arc of said curve and with the easterly right-of-way line of said Scotts Hill Loop Road, as it curves to the South to an old iron pipe at the southerly end of said curve that is S 10-28-54 E a chord distance of 212.85 feet from the preceding point; thence,
3.  S 04-21-06 W 94.18 feet with said easterly line of Scotts Hill Loop Road to an old iron pipe; thence,
4.  S 58-06-37 E 72.03 feet to an old iron pipe at the western most corner of Lot 3 as shown on a map of "Division of Bertha P. Blake" recorded in Map Book 14, Page 59, Pender County Registry;, thence,
5.  N 57-58-00 E 183.20 feet with a northerly line of said Lot 3 to an old iron pipe; thence,
6.  S 87-55-10 E 34.90 feet with another northerly line of said Lot 3, to a new iron pipe; thence,
7.  S 48-23-28 E 133.00 feet with another northerly line of said Lot 3, and with a northerly line of Lot 4, of said Blake Division to an old iron pipe; thence,
8.  S 42-33-25 E 189.76 feet with another northerly line of said Lot 4, and with the northerly line of Lot 5 of said Blake Division to an old iron pipe near the mean high water line of Topsail Sound; thence,
9.  Continuing S 42-33-25 E 2.05 feet to a point on the mean high water line of said Topsail Sound; thence,
10.  Crossing the access Channel of Scotts Hill Marina to a point on said mean high water line that is N 76-41-42 E 173.79 feet (a tie line) from the preceding point; thence,
11.  Continuing with the meanders of said mean high water line N 71-28-02 E 9.90 feet; N 54-40-04 E 22.65 feet; N 34-27-47 E 32.81 feet, and N 32-44-36 E 28.17 feet to a point on a southerly line of a Tract deeded to Bradley Benson by deed recorded in Book 1148, Page 10, said Registry; thence,
12.  N 46-05-13 W 49.15 feet to an old iron pipe in said Benson line; thence,
13.  N 46-05-13 W 225.81 feet to an old iron pipe at the western most corner of said Benson Tract. Last said point being in an easterly line of a tract deeded to Admah Lanier by deed recorded in Book 1150, page 175, said Registry; thence,
14.  S 34-29-35 W 8.02 feet with the easterly line of said Lanier tract to an old iron pipe; thence,
15.  N 56-29-23 W 198.94 feet with the westerly line of said Lanier tract to an old iron pipe; thence,
16.  N 33-23-37 E 100.02 feet with the westerly line of said Lanier Tract to an old iron pipe in the southerly line of said Simmons Drive; thence,
17.  N 55-43-54 W 167.39 feet with the southerly line of said Simmons Drive to an old concrete right-of-way monument at the easterly end of a curve having a radius of 100.53 feet; thence,
18.  With the arc of last said curve and with the southerly right-of-way line of said Simmons Drive, as it curves to the South, to a new iron pipe at the westerly end of last said curve that is N 80-44-41 W a chord distance of 79.98 feet from the preceding point; thence.
19.  S 75-49-06 W 245.52 feet, passing through an old concrete right-of-way monument at 184.36 feet, to the point of Beginning. being that same parcel conveyed to Grantors herein in Book 1302, Page 167, Pender County Registry.
2570 Scotts Hill Loop Road

TRACT TWO:  Parcel #3280-16-9955-0000
BEING all of Lot 4 on Scotts Hill Loop Road, GW Crowley Subdivision, Topsail Township as shown on map thereof recorded in Map Book 7, Page 108, Pender County Registry, reference to said map being hereby made for a more particular description.
TOGETHER WITH that certain easement recorded in Book 386, Page 448, Pender County Registry.
2573 Scotts Hill Loop Road

TRACT THREE:  Parcel #3280-17-9012-0000
BEING all of Lot 5 on Scotts Hill Loop Road, GW Crowley Subdivision, Topsail Township as shown on map thereof recorded in Map Book 7, Page 108, Pender County Registry, reference to said map being hereby made for a more particular description.
TOGETHER WITH that certain easement recorded in Book 386, Page 448, Pender County Registry.
2591 Scotts Hill Loop Road

\\Fuss-server\company\WHF\shm Deed of Easement.wpd